FILED

2024 Apr-11  PM 05:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KINSLEY KORNEGAY, a minor, by and through her parent and guardian, MATTHEW KORNEGAY,** | ) ) ) ) ) | |
| **Plaintiff,** | ) | **Case No.: 2:21-cv-00505-SGC** |
| **v.** | ) ) | |
| **HIGH POINT BIRMINGHAM, LLC and HIGH POINT CLIMBING, LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

_____

## DEFENDANTS' PARTIAL MOTION *IN LIMINE* UNDER FEDERAL RULE OF EVIDENCE 702 REGARDING PLAINTIFF'S EXPERT

_____

COME NOW Defendants, High Point Birmingham, LLC and High Point Climbing, LLC (sometimes hereinafter collectively referred to as "Defendants" or "High Point", and pursuant to the Court's Scheduling Order (Doc. 50) submits the following partial motion *in limine*. Defendants reserve the right to supplement their motions *in limine* to exclude other evidence and/or arguments to be timely filed in accordance with the Court's Scheduling Order. *See id.* As grounds for these motions, Defendants state as follows:

### FACTUAL BACKGROUND

This is a premises liability case arising from Kinsley Kornegay's untethered

jump from a rock-climbing wall at High Point Climbing and Fitness in Birmingham, Alabama. Miss Kornegay, ("Kinsley" or "Minor Plaintiff") was twelve years old at the time of this accident. She broke both her ankles when she jumped. She was unsupervised by the adults accompanying her to the gym.  Her parents were not with her, though her father, Matthew Kornegay ("Matthew" or "Adult Plaintiff") previously received and signed the written disclosures advising minor climbers would not be supervised by the facility and there is the risk of climbers not clipping into the auto belay system – which is what happened to Kinsley.

## PROCEDURAL POSTURE

This court previously granted Defendant High Point's summary judgment in part, with respect to Kornegays' wantonness claim or their negligence claim based on an alleged failure to train Plaintiff Kinsley.  As such, the only issue remaining to be tried before the jury is Kornegays' negligence claim based on a theory of premises liability.  To this end, the Court, relying on Plaintiff's expert's testimony found that a jury question existed regarding whether the lava wall constitutes an unreasonably dangerous condition due to the amusement-style aspects, the safety gate, and the lack of supervision.  *See* Doc. 50 at pg. 19-20.  If the lava wall is an unreasonably dangerous, the question then becomes whether it was open and obvious (or not) and if High Point adequately warned of such danger (or not).  *See id*.

1. **Testimony and Opinions from Plaintiffs' Expert Daniel Hague, pursuant to Rule 702, Fed. R. Evid.**

2

Plaintiff's expert, Daniel Hague, ("Hague") has, in pertinent part, offered opinions regarding (3) failure to provide adequate supervision, (4) distractions, and (5) inadequate belay gates.[1]  *See* Doc. 35-6.  In support of these opinions, Defendants anticipate Hague will testify that the Lava Wall is a distraction that can cause a climber to forget to clip in, especially a minor; and additionally, Defendants should have not only directly supervised Miss Kornegay at the Lava Wall, but also should have utilized a larger belay gate in front of the Lava Wall to prevent Miss Kornegay from accessing the climbing wall without first engaging the auto belay system. *See id*.

However, as discussed below, none of Hauge's remaining opinions are admissible pursuant to Rule 702, Fed. R. Evid. because none have a reliable basis or are reliably applied.  More specifically, Hauge is not able to cite to any facts, data, studies, or other authority for his opinions that the Lava Wall is a distraction or that the failure to use a larger gate violates any standard anywhere.  Furthermore, Hague candidly admits that there is no industry standard that requires supervision for a

---

[1]     In light of the Court's order partially granting Defendants' Motion for Summary Judgment, Hague's opinions regarding (1) lack of proper orientation to the auto-belay system and (2) lack of an auto-belay proficiency test are not relevant to the sole remaining cause of action regarding Plaintiffs' negligence claim based on premises liability law.  *See* Doc. 41.  Because the Court has already determined as a matter of law that Defendants did not fail to adequately train Kinsley, Hague's opinions regarding orientation and/or testing should already be deemed excluded from the testimony and evidence at the trial of this case because those opinions have no relevance to the remaining issues for the jury to decide.  *See id*.

climber using an auto belay system on a wall like the Lava Wall.  For these reasons,

Hague's opinions and anticipated testimony fall woefully short of the standards

required by Rule 702, Fed. R. Evid. as recently clarified.  Plaintiffs' must

demonstrate to the court that it is more likely than not:

> a. **[Hague's] scientific, technical, or other specialized knowledge** will help the trier of fact to understand the evidence or to determine a fact in issue;
> b. the **testimony is based on sufficient facts or data**;
> c. the **testimony is the product of reliable principles and methods**; and
> d. the **expert's opinion reflects a reliable application of** the principles and methods to the facts of the case.

*See* Rule 702, Fed. R. Evid. (emphasis added).  Moreover, the Advisory

Committee on Evidence Rules noted that the 2023 amendment was "to clarify and

emphasize" that (1) the proponent of the expert is required to meet its burden of

proof, and (2) expert opinions must not only apply methods that are "reliable" in the

abstract, but must reliably apply those methods in the context of the facts of each

case in which they are offered.  *See* Fed. R. Evid. 702 advisory committee note to

2023 amendment.  As such, Hague's opinions themselves must reflect a reliable

application of his principles and methods to this case, which they do not, because

there <u>are no</u> principles or methods being applied to support his opinions.  *See id*.  For

these reasons, as well as Hague's lack of qualifications, Hague should not be

permitted to offer his three remaining opinions at the trial of this case.

**A. Hague's opinions are not admissible because he lacks qualifications, fails to utilize a reliable methodology, and is not helpful to the trier of fact to determine the remaining facts in issue.**

As the Eleventh Circuit recognizes, Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning expert testimony. *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). "This function 'inherently require[s] the trial court to conduct an exacting analysis' of the foundation of expert opinions to ensure they meet the standards of admissibility under Rule 702." *Id.* (citing *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002)). The gatekeeping function mandates a "rigorous three-part inquiry" as to **qualifications**, **reliability**, and **relevance** to "determine the admissibility of expert testimony under Rule 702." *See Id.* (emphasis added). These "critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" are questions of admissibility not weight. *See e.g.,* ADVISORY COMMITTEE ON EVIDENCE RULES, April 2021 Agenda Book 60 (2021).

Expert testimony has the potential testimony to "be both powerful and quite misleading because of the difficulty in evaluating it." *Frazier,* 387 F.3d 1260. "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"

*Id.* (quoting *Fed. R. Evid.* 703). The Court's "gatekeeping" obligation, requiring an inquiry into both relevance and reliability, applies not only to "scientific" testimony, but to all expert testimony. *Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137 (1999).

Moreover, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit has described this burden as "substantial." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1107 (11th Cir. 2005).  "To fulfill its gatekeeping function under Rule 702, a district court must not simply 'tak[e] the expert's word for it.'" *See Edwards v. Shanley*, 580 Fed. Appx. 816, *16 (11th Cir. Sept. 25, 2014) (quoting Fed. R. Evid. 702 advisory committee's notes (2000 amends)).

Against this framework, Defendants turn to each of Hague's remaining opinions and anticipated testimony.

### 1.  That the Lava Wall was a Distraction.

Hauge's Opinion #4 states:

> Distractions.  The button Ms. Kornegay pressed just prior to her beginning to climb started a series of lights that lite progressively up the wall.  The climber is intended to race those lights to the top of the wall and press another button. This type of amusement is a distraction from the more important safety aspects of using the auto-belay system and the excitement to beat those lights to the top can cause a climber to forget to clip in, especially if that climber is a

6

> minor.  HPC knowingly created this easily foreseeable
> additional risk without providing any added safety
> measures.

*See* Doc. 36-6 at pg. 11. Hague clarified during deposition his opinion is "that the distraction of the lights and the anticipation of racing them to the top takes attention away from the safety procedures that [Kinsley was] hopefully taught." *See* Doc. 33-3, 46 at pg. 179:8-12.  As for the basis of this opinion, Hague testified that there "aren't any studies of any kind" and there "is no data collected" that distractions cause children to ignore safety.  *See* Doc. 33-3, 46 at pg. 181:3-25.  In fact, Hague readily admits that '[t]here are virtually no studies whatsoever of anything that happens in climbing gyms . . ." *See* Doc. 33-3, 46 at pg. 180: 16-23.

Instead, his opinion is based on his observations and experience in "at least two other cases" or "three different videos of this happening in cases [he's] worked on.  *See* Doc. 33-3, 46 at pg. 179:14-25, 180:1-2, 181:17-25.  Specifically, Hague testified:

> A. Like I said, there aren't any studies of any kind.
>
> Q. All right, what data, though, what facts?
>
> A. There is no data collected, so there's none of this. I have seen three different videos of this happening in cases I've worked on, that is -- Wu is one of them; he was racing a timer, and the other one I can't -- I can't remember the high school kid that was also racing a timer, but the same idea, you have the external device that is taking your attention away from safety, so I don't have any studies.

Q. That is your personal opinion, is what it sounds like to me.

A. Based on my observations and experience in these cases, yes.

Q. Based on your -- and experience in two other instances where you likewise assume that those were a factor in those cases as well?

A. Yes, they are a factor in those cases.

Q. Based on your assumption?
A. They are a factor in those cases.

Q. Based on no studies, facts, data of any kind that has been collected to try to determine whether there is some sort of, you know, behavioral effect in that context that affects a child's decision making; you've seen nothing like that?

A. Well, you are -- well, not for climbing gyms and, yes, I have not seen anything.

*See* Doc. 33-3, 46 at pg. 181:14-25; Doc. 33-3, 47 at pg. 182:1-17.  As discussed by the 11th Circuit, "if the witness is relying solely or primarily on experience, then the witness must explain <u>how</u> that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts . . ."  *See Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)) (emphasis in original).  Here, Hague's experience amounts to two cases (one of which he could not even remember the case name) to support his opinion "that the distraction of the lights and the anticipation

of racing them" distracted Kinsley from clipping into the auto-belay system before climbing the Lava Wall.  *See* Doc. 33-3, 46 at pg. 181:14-25; Doc. 33-3, 47 at pg. 182:1-17. Setting aside the issue of whether Hague's experience from just two cases is sufficient to form an opinion regarding distractions in this case, his own testimony belies any explanation of <u>how</u> that experience leads to his opinion here or how he <u>reliably applied</u> that experience to the facts of this case.  *See Frazier*, 387 F.3d at 1261.

For example, Hague testified that in one of those two other cases, Wu, was racing a timer, or an electronic device that took attention away from safety. *See* Doc. 33-3, 46 at pg. 181:20-25.  Yet earlier in his deposition, Hague testified that Wu, "in a rush to get started, he was, I believe, racing a friend of his, neglected to clip into the lanyard."  *See* Doc. 33-3, 21 at pg. 78:5-25; pg. 79:1-4.  In other words, Hague initially described the Wu case as a person racing another person, but when trying to bolster his "experience" for this case, described the Wu case as a person racing a timer or an electronic device.  *Compare* Doc. 33-3, 21 at pg. 78:5-25; pg. 79:1-4 *with* Doc. 33-3, 46 at pg. 181:20-25.

If the former scenario is an accurate description of the Wu case, then it is entirely factually distinct from this case and cannot be used as experience to support his opinion regarding possible distractions here, where it is undisputed that Kinsley was not racing another person but was trying to climb the lava wall to beat the

volcano before it erupts.  *See* Doc. 41 at pg. 9.  But, even if the latter scenario is an accurate description of the Wu case, Hague has nevertheless failed to explain <u>how</u> the Wu case leads to his opinion, <u>why</u> the Wu case is a sufficient basis for his opinion, and <u>how</u> the Wu case is reliably applied to the facts . . ."  *See Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)).[2] In other words, it is not sufficient for Hague to simply testify that Wu and Miss Kornegay were both climbing walls with lights and/or timers and that caused them to be distracted and they ignored safety procedures.  *See id*.  This type of "expert" testimony is precisely what Rule 702 is designed to guard against.  *See Frazier*, 387 F.3d at 1261 ("If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." (emphasis in original)).  Yet that is exactly what Hague is attempting to do here.

For instance, assuming Wu was racing a timer or an electronic device, and that the electronic device overpowered Wu's sense of safety – and entirely unproven assumption Hague manes - he has offered no other facts related to the timer or electronic device to show the Court how his experience in Wu has been reliably

---

[2] In fact, one could argue that because of Hague's differing descriptions, he has *prima facie* failed to apply his experience in the Wu case to the facts of this case, much less reliably applied that experience.

applied to the Lava Wall Kinsley was climbing.  *See* Doc. 35-6 at 10; Doc. 33-3, 46 at pg. 181:14-25; Doc. 33-3, 47 at pg. 182:1-17.  Where was the electronic device located? Was it beside the belay gate?  Was it behind the belay gate?  Was it at the top of the wall? Did it travel up the wall as the climber climbed?  What exactly was the timer or electronic device?  Was it a clock or stopwatch?  Or was it some other symbol to measure time, like lava traveling up a volcano?  How was the timer or electronic device activated? Did the climber activate it before clipping in?  Or did the climber clip in and then activate it?  If lights were involved, how bright were the lights?  What color were the lights?  Were the lights active prior to a climber engaging the timer or electronic device?  Or did the lights only become active after a climber engaged the timer or electronic device?  And if he knew the answers to those questions, how do those factors engage with and impact a young mind? Is it the same in every case for every climber?  How would he differentiate this case from the thousands of instances where young climbers are not overcome by an electronic timer?  How would he apply his "experience" to those cases or this one?  He can't. He doesn't know what he is talking about.

Even if Hague were able to answer these questions as they pertain to the Wu case, there is no evidence to suggest he could reliably answer these questions in this case because he readily admits that he has never been to any High Point facility, let alone the subject location.  *See* Doc. 33-3, 22 at 84:20-25; 85:1-4 ("Q. Well, in

comparing High Point Climbing & Fitness to the Altitude Trampoline Park, and I would assume that you've been to a High Point facility? A. No. Q. No? A. No. Q. Never been to the gym where this occurred? A. No."). Accordingly, his "distraction opinion" is not based on (1) sufficient experience regarding minor climbers failing to follow safety procedures because they were distracted by lights/"lava", (2) is not the product of reliable principles and methods to determine whether something is a distraction for a minor climber and further, the effect of a distraction on a minor climber, or (3) reflects a reliable application of principles and methods to the facts of this case. *See* Rule 702, Fed. R. Evid. He has no principles or methods to apply, reliably or otherwise.

Moreover, even if the Court is inclined to find the reliability prong of Rule 702, Fed. R. Evid. has been met, Hague's education and training is utterly devoid of any specialized knowledge for Hague to be qualified as to the effect a distraction may have on a young climber, i.e., that the Lava Wall and the anticipation of racing the "lava" caused her not to clip into the auto-belay system before she hit the button to activate the lights. This type of opinion falls squarely within the field of human factors, which the Northern District has recognized:

> The field of human factors "'is concerned with the application of what we know about people, their abilities, characteristics, and limitations to the design of equipment they use, environments in which they function, and jobs they perform.'" *Padula v. Carnival Corp.*, 2017 U.S. Dist. LEXIS 230866, 2017 WL 7792714, at *5 (S.D. Fla. Oct.

12

13, 2017) (quoting Human Factors and Ergonomics Society, Educational Resources, Definitions of Human Factors and Ergonomics)); *see also* 40 AM. JUR. TRIALS § 629 (originally published in 1990) ("Human factors is also a field that is increasingly concerned with human perception and awareness, and the interrelationship of a human's inherent capabilities and limitations with [ ] the surrounding environment.").

*See Stiefel v. Malone*, 2021 U.S. Dist. LEXIS 23552, n.10 (N.D. Ala. Feb. 8, 2021). Defendants believe Plaintiffs will agree Hague is singularly unqualified to offer any thoughts in this regard.[3]   Hague has absolutely zero scientific, technical, or other specialized knowledge as to "human perception and awareness, and the interrelationship of a human's inherent capabilities and limitations with [ ] the surrounding environment" or, more specifically, the development of juvenile minds and their attention spans.  *See* Ex. 1, Doc 33-3 at 3 pg. 7:24-25; 8:7-24; Doc 33-3 at 4, pg. 10:3-22.

Additionally, the only two authorities on which Hague relies are: (1) his own self-published book and (2) a publication from the Climbing Wall Association ("CWA").  *See* Doc. 35-6 at 2; Hague, Dan; Artificial Climbing Wall Operation and Risk Management. 2019 (ACWO), attached was "Exhibit 2"; and Doc. 35-3. Notably, the word "distraction(s)" does not appear anywhere in the CWA

---

[3]  Hague holds a bachelor's degree from Virginia Tech in industrial forestry and a MBA from Ohio State University, after which he started working as a market analyst.  *See* Doc 33-3 at 3 pg. 7:24-25; 8:7-24.  He also sold real estate for a period.  *See* id. at 4, pg. 10:3-22.  Afte that, he entered the climbing business.  *See id*. at 4, pg. 10-24-25. The only other certification or training he holds is as a Climbing Wall Instructor.  *See* Hague's CV, attached as "Exhibit 1".

publication, much less any discussion as to what effect a distraction may have on a minor climber related to using safety procedures.  *See generally*, Doc. 35-3.  In fact, Hague readily acknowledges that "the CWA standards don't address distractions." *See* Doc. 33-3 at 33, pg. 128:6-9.  Additionally, while the word "distraction" does appear twice in Hague's self-published book, it discusses belayers possibly becoming distracted by "the many people commonly found in an indoor setting." *See* Ex. 2 at 50 pg. 87 ¶ (m); 59 pg. 105 ¶ (m).  However, there is no discussion regarding distractions for climbers and certainly no discussion as to what effect a distraction may have on a minor climber related to using safety procedures, and if there was it would just be made up because Hague has no basis to speak authoritatively on the topic. *See id*.  Simply stated, Hague is not qualified to offer an opinion that the lava wall was a distraction at all, much less a dangerous one. *See Stiefel v. Malone*, 2021 U.S. Dist. LEXIS 23552, n.10 (N.D. Ala. Feb. 8, 2021); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).  Plaintiffs have the burden of proof and Hagues' distraction opinion is unsupported and inadmissible.

### 2. The belay gate was inadequate.

Hague's Opinion #5 states:

> <u>Inadequate belay gates</u>….An adequately sized belay gate would prevent a climber access to the beginning holds until the climber had detached the safety lanyard from the gate.   HPC's belay gates are clearly inadequate at

14

preventing a climber access to the climbing wall.

*See* Doc. 36-6 at pg. 11. As for the basis, Hague again confessed "there isn't any data about anything in climbing gyms" and could not cite to any other authority for his opinion other than "common sense." Specifically, Hague testified:

> Q. So what sufficient facts or -- I use the word "data" again, do you have that would – that would support the opinion that larger belay gates or this Nicros system would prevent accidents like these?
>
> A. I don't know what to say, other than –
>
> Q. Other than your personal opinion?
>
> A. Other than the common sense of if you can't touch, stand on, grab, any of the holds, how are you going to get on the climbing wall?

*See* Doc. 33-3 at 49, pg. 192:3-12. As an initial matter, anything that is common sense does not require expert testimony to assist the trier of fact to determine an issue in the case. *See Harris v. Raymond Corp.*, 2018 U.S. Dist. LEXIS 215407, *28 (N.D. Ala. Dec. 21, 2018). For this reason alone, Hague's own testimony belies the need for the jury to hear from him, as an expert, regarding the size of High Point's belay gates. *See id.* Additionally, just like Opinion #4 discussed *supra*, Hague's opinion and testimony here is not the product of reliable principles and methods, nor does it reflect a reliable application of any principles and methods to the facts of the case. *See* Rule 702, Fed. R. Evid.

For example, Hague testified that while belay gates are "used almost

universally," the CWA "don't reference anything about auto belay gates." *See* Doc. 33-3 at 33, pg. 126:19-25, 127:1-2.   Stated differently, the CWA publication designed for industry practices – and which Hauge agrees is the standard – is entirely silent as to the use of belay gates for operating indoor climbing facilities, much less *how* belay gates encourage climbers to attach the auto-belay before starting to climb. *See id*; *see generally*, Doc. 35-3.   So, lacking any authority, he simply decrees it. This is another example of *ipse dixit* that Rule 702, Fed. R. Evid. is designed to guard against.   *See Frazier,* 387 F.3d at 1261.

For context, on the right is what Hague called an adequate belay gate in his book.   On the left is the Highpoint belay gate.



Hague had to admit the photo from his book depicted an "adequate" belay gate

despite its similarity to the one he now seeks to criticize.  *See* Ex. 2 at 31, pg. 48.

Initially, Hague testified:

> Q. So in order to have an adequate belay gate, it either has
> to be **large enough to cover every hold that you could
> possibly start on**, or **the only holds available to start are
> the ones behind the belay gate**?
>
> **A Yes, that is my opinion.**
>
> Q Okay, so any other belay gates configured in any other
> way are inadequate in your opinion?
>
> A If you can climb around the belay gate, then yes, they
> are inadequate.

*See* Doc. 33-3 at 34, pg. 132:1-10 (emphasis added).   However, when confronted

with the above-picture – a photograph Hague took[4] – he testified:

> A Then let me clarify. The belay gate has to cover enough
> of the holds to prevent somebody from getting onto the
> climbing wall. I think that that belay gate shows that it
> basically does. It's covering the hold at the base of the
> climb.
>
> Q All right.
>
> A It would be very hard to start that climb without --
> without lowering that belay gate.
>
> Q And just so we're clear, we're referring to Page 48, the
> picture of the auto belay gate, and it is your testimony that
> that auto belay gate represents an adequate auto belay gate

---

[4]    *See* Exhibit 2 at 83 (crediting himself with the photograph that appears on page 48 of his
book).

> under the circumstances that you described earlier?
>
> A It's hard to tell from that picture which is so zoomed in,
> but it appears that it covers the starting foot holds for these
> climbs.

*See* Doc. 33-3 at 35, pg. 136:20-25; 137:25-2.  This is not a "reliable" application of an opinion and no longer may plaintiffs escape admissibility by claiming these blatant contradictions go to weight.  This is an admissibility problem.

Moreover, because there is no industry standard that requires a climbing gym to "secure[ ] the bottom of the route against, you know, unprotected climbers," Hague is not allowed to testify that "but for" a larger belay gate, this accident would not have happened.  *See* Doc. 33-3 at 33, pg. 126:19-25, 127:1-2.  A defective condition cannot be proven just by imagining an alternative.  And the accident itself is not evidence of a defect.  But even if using a belay gate were an industry standard, Hague concedes "[t]here will always be some enterprising individual who can – will figure out how to defeat anything, but it has to be made very difficult. . ."  *See id*. at 36 pg. 140:4-11.

Though not a formal opinion, Hague concludes his report by stating, *inter alia*, "technology such as the Nicros Auto Belay Safety System" would prevent similar accidents with other climbers not clipping in.  *See* Doc. 35-6 at pg. 11.  However, Hague readily admits that he does not know of any gym that uses that system.

> Q. Okay. Do you know of any gyms that use that system?
> A. No.

18

Q. Okay. Have you ever been into a gym that has used it –
A. No.
Q. -- and says, this doesn't work, we're not using it anymore?
A. No.
Q. You just know that it existed, but you've never seen it actually used?
A. Correct.
Q. But it is your opinion that would have prevented this accident?
A. Yes.

*See* Doc. 33-3, 49 at 190:22-25; 191:1-11.  As with his opinion regarding a larger belay gate, Hague is offering nothing more than a "but for" causation opinion without any support from the CWA standards.  *See generally*, Doc. 35-3.  Worse than that, however, Hague's opinion regarding the Nicros Auto Belay Safety System is not even based on his experience because he has never seen that system actually in use.  *See* Doc. 33-3, 49 at 190:22-25; 191:1-11.

In sum, Hague is once again attempting to offer *ipse dixit* opinions that are directly at odds with Rule 702, Fed. R. Evid. because there is no methodology or principles supporting his opinion, much less a reliable application of them.  Putting a couch in front of the lava wall may have prevented this accident, but that does not mean the Defendants were unreasonable for not using one.  Hague needs to identify real experience and rely on actual data, and then apply both honestly to our case.  He does neither.

**3. Plaintiff's expert Daniel Hague cannot testify that in his opinion there should have been supervision at the lava wall.**

Hague's Opinion #3 states:

> <u>Failure to provide adequate supervision</u>.  According to the Perfect Descent Operations Manual for the 220 Series, the devices in use at HPC Birmingham, "**Climbers should be under constant supervision by a trained operator. Before ascending the wall, operators should check to verify that each climber has:**
> - **Properly fit and secured climbing harness.**
> - **Properly clipped their harness into the Perfect Descent Climbing System carabiner.**"
> HPC only provided sporadic supervision when time allowed.  There was no direct supervision by a trained operator who would have ensured that Ms. Kornegay was properly secured to the auto-belay system prior to her leaving the ground.

*See* Doc. 36-6 at pg. 10-11 (emphasis in original).  Hague's opinion regarding supervision is premised entirely on the Perfect Descent Operations Manual.  *See id*. In fact, Hague's testimony clarifies that his "opinion" #3 is not really his opinion, but rather a statement regarding the manual's instruction.  *See* Doc. 33-3. pg. 45 at 177:15-22 ("Q. So the standard is for every climbing gym using the Perfect Descent auto belay system, a trained staff member has to constantly supervise every single user, climber, in their gyms at all times?  A. Again, <u>this is not my opinion</u>; this is the Perfect Descent's instruction.") (emphasis added).  In other words, Hague will not tell the jury that, in his opinion, Defendants were negligent for not supervising Kinsley at the lava wall.  He will just say the manual accompanying the auto belay

states supervision is required. *See id.* Nothing would be easier than for him to adopt this statement as his own stance on industry requirements, but he won't. We can speculate as to why, but for now the important point is Plaintiffs' expert will not testify that supervision at the lava wall is an industry standard.

Can he circumvent this by simply pointing to the Perfect Descent manual, while simultaneously denying he has the same opinion? No. First, the Perfect Descent manual is not an industry standard, but if it were, Hague's admits he has never been to a climbing gym using the Perfect Descent auto belay system where a trained operator is constantly supervising every climber. *See id.* pg. 45 at 172:19-25. In other words, Hague has been in hundreds of gyms all over the world and not one of those gyms using the using the Perfect Descent auto belay system had a trained operator constantly supervising every climber. *See id.* These hundreds of gyms that Hague has been in don't have a trained operator constantly supervising every climber because the standards do not require it. *See id.* pg. 46 at 177:15-22. This is a fact that Hague himself readily concedes. *See id.* It is not truthful or honest (i.e. reliable) to deny having an opinion about supervision, yet criticize the Defendants for not following verbiage in a manual that he admits he has never seen followed by any gym, anywhere. Again, this is not a weight issue. Hague has to identify real standards and apply them fairly.

If, however, Hague convinced this Honorable Court the Perfect Descent

manual is a standard, that the standard requires supervision, and the fact he has never seen any gym follow that standard is immaterial, another problem remains. For Hague to reliably apply his methodology to this case, he cannot cherry-pick portions of manual (setting aside he does not even personally endorse the portion he cites). As it pertains to the duty to supervise, Perfect Descent has issued a clarification about their manual. Perfect Descent explained that CWA practices, not their manual, are the reasonable standard to follow when the gym has written policies and provides auto belay orientation. "Perfect Descent recommends that climbing gym operators follow established [CWA] practices and guidelines for the operation of recreational auto belays." Exhibit 3.

If Hague's "don't ask me, just follow the manual" position passes as sufficiently based and reliable data, he still must apply that data reliably. If he wants this Honorable Court to follow the Perfect Descent manual, though nobody in the industry does, including Hague himself, then we must follow all of it, including the part where the authors of the manual explain the "constant supervision" wording is inconsistent with the CWA and the CWA should control. And, as established, the CWA requires no such monitoring. Nor does Hague.

## **CONCLUSION**

Plaintiff's expert Daniel Hague's testimony and opinions do not pass the Court's "gatekeeping" test for admissibility under Rule 702, Fed. R. Evid. His

opinions lack sufficient facts or data, are not the product of reliable principles and methods, and do not reflect a reliable application of any principles or methods to the facts of this case. *See* Rule 702, Fed. R. Evid. As such, all of his opinions are inadmissible and he should not be permitted to testify at the trial of this case. Accordingly, and for all of the foregoing reasons, High Point respectfully requests this Honorable Court exclude Hage from testifying in this case and, as appropriate, reconsider if Plaintiff can prove her case without him.

Dated this the 11th day of April, 2024.

*s/ Priscilla K. Williams*
Neal D. Moore, III (ASB-3971-M73N)
Priscilla K. Williams (ASB-3424-A43N)
*Attorneys for Defendants*

**OF COUNSEL:**
Christian & Small, LLP
505 North 20th Street
Suite 1800
Birmingham, AL 35203
Phone:      (205) 795-6588
Email:      ndmoore@csattorneys.com
            pkwilliams@csattorneys.com

### CERTIFICATE OF SERVICE

I hereby certify that I have this date, using the CM/ECF filing system which will send notification of such filing, served a copy of the foregoing pleading upon all counsel of record on this the 11th day of April, 2024:

Austin B. Whitten
Michael C. Bradley
**Pittman, Dutton & Hellums, P.C.**
2001 Park Place North, Suite 1100
Birmingham, Alabama 35203
austinw@pittmandutton.com

*/s/ Priscilla K. Williams*
OF COUNSEL